IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

THERESA DEGRUY, Administratrix of
the Estate of Martha James, Deceased                                    PLAINTIFF

v.                                              CIVIL ACTION NO.: 4:12-CV-025-SA-JMV

DR. TARENCE E. WADE;
and DR. DENNIS WAYNE AUST                                              DEFENDANTS

MEMORANDUM OPINION

Presently before the Court is Defendants' Motion to Dismiss [8], brought under Federal Rule of Civil Procedure 12(b)(6). Because Plaintiff is not entitled to relief under 42 U.S.C. § 1983 based on any set of facts or potential theory that is consistent with the allegations in her complaint, that motion is granted.

FACTUAL BACKGROUND

The current action was brought by Theresa DeGruy on behalf of the estate of Martha James. According to the Complaint, a Grenada Lake Medical Ceneter (GLMC) ambulance was dispatched on February 20, 2010 in response to a report that James was not breathing. James was subsequently placed in the ambulance and transported to the GLMC emergency room where she was examined by Dr. Dennis Wayne Aust. Aust ordered a number of diagnostic tests before eventually prescribing medications for the patient and authorizing discharge. Aust additionally directed James to follow up with her psychiatrist on February 22, 2010.

The next day, on February 21, 2010, the GLMC ambulance was once again dispatched in response to a call regarding James. Upon arrival, emergency medical services (EMS) personnel found James lying in bed and alert. The EMS personnel nonetheless transported James to GLMC for evaluation. James was then evaluated by Dr. Tarence E. Wade, whose initial

impression was that James suffered from schizophrenia. Wade determined that James should be transferred to Life Health and his discharge instructions were for James to report to Life Help for admission.[1]

On February 22, 2010, EMS personnel was again dispatched on a call regarding James. By the time the ambulance arrived at GLMC, James was in cardiac arrest and was being administered CPR. EMS personnel administered two milligrams of epinephrine and two milligrams of atropine and intubated James. James was subsequently placed in a treatment room and was given an additional two milligrams of epinephrine and one milligram of atropine. James died approximately thirty minutes later without having been defibrillated or shocked.

DeGruy thereafter filed the present action on behalf of the estate of James, alleging liability on the part of Defendants under 42 U.S.C. § 1983 based on the alleged violation of James's constitutional rights, and under state tort law for medical negligence. Specifically, the Plaintiff avers that, despite being subjectively aware that James was found not breathing on February 20, 2010, Aust failed to use professional judgment to examine, test for, and treat the condition that ultimately led to her death. Moreover, Plaintiff alleges he failed to timely refer James to a cardiology specialist or perform a cardiac work-up. Finally, Plaintiff avers that on February 22, 2010, Aust failed to admit the decedent for a cardiac work-up and failed to diagnose, recognize, or treat her arrhythmia during her emergency room vist. In doing so, he allegedly deviated from the applicable standards of care by failing to order an EKG, failing to perform a physical examination, failing to obtain an adequate history, and failing to refer James to a cardiologist.

---

[1] Plaintiff's complaint indicates that Wade determined James should be transferred to "Life Health," but then reflects that he subsequently instructed her to report to "Life Help." The Court is unable to determine whether the differentiation was intentional or inadvertent.

In regard to Wade, Plaintiff avers that on February 21, 2010, despite being subjectively aware of the patient's prior GLMC admissions, Wade failed to use professional judgment to admit James for a cardiac work-up and failed to diagnose, recognize, and treat her arrhythmia during her emergency room visit, and thus caused or contributed to her death. Although he was subjectively aware of the decedent's signs and symptoms, Wade responded with deliberate indifference and did not provide decedent with a complete and adequate diagnostic workup.

Plaintiff further contends that the autopsy performed by the Mississippi State Medical Examiner's Office indicated that the most likely cause of death was a cardiac arrhythmia. According to Plaintiff, such condition requires immediate CPR, the use of an EKG to determine actual heart rhythms, and defibrillation of treatable rhythms. According to Plaintiff, James had treatable rhythms, but was not shocked. Thus, on February 22, 2010, Aust's actions of failing to consult with Wade in regard to the patient's previous admission, and his deliberate indifference to James's need to be cardioverted or shocked to ameliorate her condition constituted deliberate indifference to the decedent's cardiac signs and symptoms of an arrhythmia. The errors, omissions, and failures of Aust and Wade, in the eyes of Plaintiff, were grossly negligent and constituted deliberate indifference to decedent's right to emergency medical care.

Defendant Aust filed the immediate motion to dismiss, alleging that Plaintiff's complaint fails to state a claim upon which relief may be granted under 42 U.S.C. § 1983. Defendant Wade subsequently joined in Defendant Aust's motion to dismiss. The Court now considers the merits of Defendants' Rule 12(b)(6) motion.

## MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

"Motions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009) (quoting Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 (5th Cir. 2005)). A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Id. Although the court is not bound to accept as true legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678-79, 129 S. Ct. 1937, the court "may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema, 534 U.S. 506, 507, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. Id. It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. Twombly, 550 U.S. at 555, 127 S. Ct. 1955. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. Lormand, 565 F.3d at 255-57. If there are insufficient factual allegations to raise a right to relief above the speculative level, the claim must be dismissed. Twombly, 550 U.S. at 555, 127 S. Ct. 1955.

DISCUSSION

Plaintiff's §1983 claim is premised on an alleged violation of the decedent's due process rights provided by the Fourteenth Amendment. According to Plaintiff, "Defendants Wade and Aust's actions…constitute deliberate indifference to the decedent's serious medical needs under the Fourteenth Amendment to the United States Constitution." To state a claim under 42 U.S.C. § 1983, plaintiff must indeed first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law. See, e.g., West v. Atkins, 487 U.S. 42, 48-50, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); Piotrowski v. City of Houston, 51 F.3d 512, 515 (5th Cir. 1995). Defendants argue that Plaintiff can meet neither of these requirements.

As well-established as it is that Section 1983 imposes liability for violations of rights protected by the Constitution and federal law, it is equally clear that it does *not* provide liability for violations of duties of care arising out of state tort law. Baker v. McCollan, 443 U.S. 137, 146, 99 S. Ct. 2689, 61 L. Ed 2d 433 (1979). Simply put, "the Fourteenth Amendment [is not] a font of tort law to be superimposed upon whatever systems may already be administered by the states." Lewis v. Woods, 848 F.2d 649, 651-52, (5th Cir. 1988) (quoting Paul v. Davis, 424 U.S. 693, 701, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976)). Subsequently, the Fourteenth Amendment does not provide a right to be free from injury whenever a government actor may be characterized as a tortfeasor. San Jacinto Sav. & Loan v. Kacal, 928 F.2d 697, 700 (5th Cir. 1991).

In the case at hand, Plaintiff argues that the Defendants violated James's clearly established constitutional right to medical care. Although Plaintiff expends significant argument regarding whether Defendants acted under color of state law for purposes of § 1983 liability, she

spends significantly less attention on whether decedent was owed a constitutional or statutory right. Instead, Plaintiff merely assumes that "[t]he constitutional rights of a medical patient seeking medical treatment from persons acting under the color of state law flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment."

In support of this purported right, Plaintiff cites to several cases that are wholly inapplicable to the situation at hand. As stated in Deshaney v. Winnebago County Department of Social Services, the Due Process clause generally confers no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual. 489 U.S. 189, 196, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1988). In certain situations, however, such a duty might arise based on specific "special relationship" created or assumed by the state. Id. at 197, 109 S. Ct. 998. For instance, the Court has acknowledged such an affirmative duty in the case of both incarcerated prisoners and involuntarily committed mental patients. Id. (citing Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); Youngberg v. Romeo, 457 U.S. 307, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982)). Such relationships require the state to provide medical care because the deprivation of the restrained individuals' liberty interests renders them unable to care for themselves. Id. at 199, 109 S. Ct. 998; see also Mitchell v. Tunica County, Miss., 1998 WL 527263, *2 (N.D. Miss. Aug. 5, 1998) ("Defendants' duty under the Fourteenth Amendment to ensure that the plaintiff receives medical attention for obvious and life threatening injuries does not arise until the plaintiff is in the custody of the defendants.").

Presumably in reliance on this body of case law, Plaintiff's complaint avers that Defendants "were in a statutory mandated special relationship with the decedent and [had] a duty to reasonably provide appropriate emergency medical care to her as an emergency room patient."

Plaintiff, however, misses the mark. In Deshaney, the Court specifically articulated that the affirmative duty to provide care did not stem from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." Id. at 1005, 1006, 109 S. Ct. 200. In the case at hand, the State had simply not stripped James of the ability to act for herself, and no such special relationship was created. See Monahan v. Dorchester Counseling Ctr., Inc., 770 F. Supp. 43, 46 (D. Mass. 1991) (noting that the state did not initiate a special relationship by providing voluntary psychiatric care at state-run mental health center and determining that such a relationship arises only when the individual is taken into custody and held involuntarily); see also James v. Nocona Gen. Hosp., 2004 WL 2002425, *6 (N.D. Tex. Sept. 8, 2004) (concluding that no special relationship arose between inpatients and public hospital).

Additionally, Plaintiff's reliance on Atteberry v. Nocona General Hospital is likewise misplaced. 430 F.3d 245, 245 (5th Cir. 2005). In Atteberry, the plaintiffs alleged that a nurse employed by defendant hospital had repeatedly stolen Mivacron from hospital crash carts and used it to intentionally kill as many as twenty-two patients over the course of several months. Id. at 249. The district court denied motions to dismiss filed by both the hospital administrator and director of nursing, and that denial was subsequently appealed. Id. at 251. On appeal, the question was whether plaintiffs had sufficiently alleged that the supervisors could be held liable for the nurse's alleged violations of the patients' constitutional rights. Id. at 254. The court noted that although supervisors may not ordinarily be held vicariously liable for constitutional violations committed by subordinates, they may be liable if they act or fail to act with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates. Id. (emphasis in original).

7

The fly in the ointment for Plaintiff, here, however, is that she is not attempting to hold a supervisor liable based on deliberate indifference to the violations of other's constitutional rights committed by a subordinate. Instead, Plaintiff in the case at hand need first be able to show that a constitutional violation occurred. In <u>Atteberry</u>, the underlying constitutional violation was that of an alleged intentional killing. See <u>James</u>, 2004 WL 2002425 at *7. Unlike Plaintiff's proffered right to medical treatment presented here, the Fifth Circuit has expressly held that a murder by an employee of a state agency violates the Fourteenth Amendment right to not be deprived of life and liberty. <u>Id.</u> (citing <u>United States v. Causey</u>, 185 F.3d 407, 414-15 (5th Cir. 1999)). Thus, this Court fails to see how the Fifth Circuit's holding in <u>Atteberry</u> can be construed to establish a constitutional right to medical treatment in the case of an ordinary citizen who is not being held involuntarily by the state. See also <u>Brown v. Penn. Dep't of Health Emerg. Med. Servs. Training Inst.</u>, 300 F.3d 310, 320 (3d Cir. 2002) ("states are not constitutionally obligated to provide rescue services to their citizens, nor are they constitutionally required to provide competent rescue services when they voluntarily choose to undertake this task). Moreover, the Court determines that there is no such constitutional right to medical treatment as envisioned by Plaintiff.

## CONCLUSION

Because Plaintiff cannot, consistent with the allegations in her complaint, show a violation of the Constitution or federal law capable of supporting her § 1983 claim, the Court determines that Defedants' Rule 12(b)(6) motion to dismiss is due to be granted. Plaintiff's claims arising under 42 U.S.C. § 1983 are hereby dismissed. The Court notes, however, that Defendants have not attacked Plaintiff's state-law based medical malpractice claims and they subsequently survive.

SO ORDERED, this the 15th day of March, 2013.

/s/ Sharion Aycock
**U.S. DISTRICT JUDGE**